J. O. COFFEY, Trustee in Bankruptcy, Appellant, v. W. A. HIGBEE and E. H. ROBERTS.—298 S. W. 766.

Division One, October 10, 1927.

*Frank & Stewart, H. M. Saxbury* and *Rolston & Rolston* for appellant.

12

*M. D. Campbell* and *Higbee & Mills* for respondents.

ATWOOD, J.—This is a suit in equity by the trustee of the bankrupt estate of William Knittel to set aside a deed of trust given by William Knittel on about 192 acres of land to E. H. Roberts, trustee, to secure to W. A. Higbee certain promissory notes therein described and aggregating the principal sum of $11,000. The case was tried to the court, resulting in judgment for defendants, and plaintiff has appealed.

Plaintiff went to trial on his amended petition, averring, among other things, that William Knittel was adjudged a bankrupt March 18, 1924; that on November 16, 1923, he was the owner of said 192 acres of land located in Schuyler County, Missouri; that on said date he was indebted to various persons in the sum of $31,271.70, and was insolvent; that he had no property with which to pay his obligations except his said land; that his son Ernest Knittel was indebted in a sum in excess of $30,000, among said debts being one for the principal sum of $10,000 due defendant Higbee; that on said 16th day of November, 1923, and again on November 22, 1923, with intent to hinder and delay his creditors, he executed a deed of trust for a fictitious consideration, conveying his said land to defendant E. H. Roberts, as trustee to secure to defendant, W. A. Higbee, said $10,000-debt of Ernest Knittel; that William Knittel did not owe defendant Higbee the debt secured by said deed of trust; and that said deed of trust was without consideration. The prayer was that the deed or

deeds of trust be set aside and the land subjected to the claims of general creditors.

The answer of defendant Roberts was a general denial, and that of defendant Higbee was a general denial coupled with certain admissions of a formal nature.

The record discloses that in 1920, Ernest Knittel bought a 400-acre farm for which he paid $64,000. Of this amount he borrowed $40,000 from defendant Higbee, and secured the payment thereof by various deeds of trust. On March 13, 1922, William Knittel became surety on a $7500-note of Ernest Knittel's payable to the Queen City Bank, of which plaintiff J. O. Coffey was president, and took from Ernest Knittel a deed of trust on said four hundred acres of land junior to various deeds of trust then held by defendant Higbee thereon, which recited that it was for the purpose of holding William Knittel harmless by reason of his having signed said $7500-note as surety. On the same date plaintiff's bank caused Ernest Knittel to give it a chattel mortgage on all the personal property he owned, including the wheat then growing on this land, to secure another note for $5880 that he owed said bank. In the spring of 1923 Ernest Knittel defaulted in the payment of part of his interest on the notes to defendant Higbee and, because of the chattel mortgage to plaintiff's bank, he had no property out of which to raise the money to pay the same. Defendant Higbee made several unsuccessful efforts to collect this interest, culminating in a conversation in his office on the Saturday before November 16, 1923, in which Ernest Knittel told him that he was not able to pay his taxes or his interest and would be unable to pay his interest the following year, because Coffey refused to let him have any money out of his crop with which to pay same. Knittel agreed to return and talk the matter over later in the day. Instead, however, he went to the Recorder's office to get a list of the property covered by the chattel mortgage to Coffey's bank, to see if he had any property unincumbered which he could sell for the purpose of protecting his farm. At that time he asked the Recorder, Harry D. Hall, to interview defendant Higbee and ascertain if he would grant additional time, and asked Hall to let him know what success he had. In a few days Hall spoke to the defendant Higbee, and in that conversation the latter said that while he was not especially anxious to take over the farm, but would rather take it over and get half the proceeds as rent than to let it stand as it was and get none of the proceeds. Hall asked Higbee if he would grant an extension of time on the second mortgage notes, if William Knittel would make him safe. Higbee agreed to do so, and Hall replied that he would be in Queen City in a few days and that he would see William and Ernest Knittel about it. Hall reported to them the results of his conference with defendant Higbee, and the three agreed to meet at Higbee's office the following day. At this meeting Hall, as spokesman

for William Knittel, said to the defendant Higbee, that if he would advance to William Knittel an additional $1000 with which to take up the Sarah F. Gentner note, on which the latter was pressing for payment, and agree that his daughter, Mrs. Patterson, might have a first mortgage on forty acres of William Knittel's land to secure a note of $750 which he owed her, and would agree to extend the time on the ten $1000-second-mortgage-notes until March 1, 1925, that he, William Knittel, would execute a deed of trust on his own land as additional security for the ten $1000-notes and the advancement of $1000 so desired, but that his wife would not join therein. This being assented to, the transaction was closed and the trust deed executed and filed that afternoon. In a short time an error in the description of forty acres of the land was called to the attention of defendant Higbee. He met William Knittel at Kirksville and called his attention thereto, made the correction therein, and Knittel re-acknowledged the instrument and it was re-filed on November 21st. There was but one instrument and it bears the two filing marks. Other creditors of William Knittel, learning of this transaction, immediately and on November 21, 1923, began actions against William Knittel for indebtedness he owed them, and attached William Knittel's said land. On March 18, 1924, being just over four months after the first deed of trust was executed, and within less than four months after the attachment suits were filed, and within less than four months after the corrected deed of trust was re-acknowledged and re-filed, William Knittel, through defendant Higbee as his attorney, filed, in the bankruptcy court for the Eastern District of Missouri, his petition to be adjudged a bankrupt, and on that date he was adjudged a bankrupt. The $1000-note of November 16, 1923, described in the deed of trust, represents $1000 paid to William Knittel on that date by check, which was endorsed by William Knittel to Sarah F. Gentner and endorsed by and cashed by her. Mrs. Gentner held a $1000-note on William Knittel and his wife and this money was used in taking up that note.

Prior to the 16th day of November the defendant Higbee and William Knittel had never met. They had no business transactions, and not even a speaking acquaintance. There is no evidence of collusion, fraud or secret agreements between William Knittel and defendants. It was shown at the trial that William Knittel had signed a number of notes to plaintiff's bank and the Peoples Bank and to various individuals. A number of these notes were originally executed by Ernest Knittel individually, and when the holders of these notes saw that they needed strengthening they induced William Knittel to sign the same. This is noticeably true of the $7500-note held by the plaintiff's bank and the $2500-note held by the Peoples Bank.

Respondents have moved for a dismissal of this appeal on the ground that appellant's brief violates that part of our Rule 15 which provides that "the brief for appellant shall distinctly allege the

errors committed by the trial court." While ten out of the eleven propositions stated under appellant's sub-head, "Assignments of Errors," are too general to comply with this requirement of our rule, yet they are followed by assignments under the sub-head, "Points and Authorities," some of which, including a repetition of the one definite "assignment of error," are sufficiently specific and distinct. We will overrule respondents' motion and separately dispose of appellant's points.

The first proposition stated by appellant under the sub-head "Points and Authorities," is:

"First: The court should have found for the plaintiff under the evidence at the very least so as to set such deeds of trust aside as to all except for the one thousand dollars that Higbee had advanced.

"Second: The court should have set the deeds of trust aside *in toto*, as defendant Higbee had not paid out the one thousand dollars at the time the attachment suits were filed."

In the above appellant has utterly failed to allege any errors committed by the trial court. This court will not hunt through the record for errors not specifically pointed out. [State v. Whitsett, 232 Mo. l. c. 530.]

Appellant's second, third, fourth and fifth points assign error in numerous instances in the rejection and in the admission of testimony. We might well ignore these assignments, as they are nowhere elaborated upon in the brief and no reasons are given by appellant why they should be deemed well taken, but we have carefully examined them as well as the authorities cited and find no merit in these assignments.

Appellant's sixth point, which was also definitely stated as an assignment of error and apparently chiefly relied upon, is that "the trial court should have permitted plaintiff to take his nonsuit."

Appellant's abstract of the record entries in the Circuit Court in this cause shows that the trial commenced on the 28th of October, 1924, and continued until the 29th of October, 1924, when "the hearing of said cause was continued until the 8th day of November, 1924, and said court then and there on the said 8th day of November, 1924, after considering the pleadings and evidence in said cause, made and gave its finding and final judgment in said cause," etc. At the close of plaintiff's case in chief his counsel said: "This is all of our evidence, except we would like to have permission to introduce that record when it gets here." On October 29th, at the close of the whole case, the court said: "Are you through, all of you, gentlemen?" Counsel for plaintiff replied: "Yes, except we want to show the allowance of those claims when it comes." The minute entry of the Clerk of the Circuit Court under date of October 29th showed that the trial of this case was "resumed and concluded and taken under advisement." The minute entry on the judge's docket in his own

handwriting was that this case was "tried October 28th and 29th and submitted to be briefed and argued November 9th." When court convened on Saturday, November 8, 1924, pursuant to adjournment, plaintiff's counsel asked that the court grant plaintiff permission to take a voluntary nonsuit in the case. Defendants' counsel objected on the ground that the cause had been fully tried and submitted to the court. The court thereupon heard plaintiff's request, the foregoing record and minute entries being in evidence and it being further admitted that the request for permission to take nonsuit was made before the decision of the case, but two or three days after brief was submitted by defendants and after plaintiff's counsel had cited authorities in his behalf. Plaintiff's request for leave to take a nonsuit was thereupon ruled by the court thus:

"Gentlemen, in view of the record here I think the cause was submitted, and it would be error to permit the taking of a nonsuit under the statute, and the objection to plaintiff's motion for leave to take a nonsuit will be sustained and the motion denied."

Section 1410, Revised Statutes 1919, providing when nonsuit may be taken is as follows:

"The plaintiff shall be allowed to dismiss his suit or take a nonsuit at any time before the same is finally submitted to the jury, or to the court sitting as a jury, or to the court, and not afterward."

The clerk's minute entry unequivocally shows that the cause was finally submitted to the court before any request was made for leave to take a nonsuit, and counsel for appellant admit that if this "was the only evidence on the question, then the case might be taken as finally submitted." They rely upon the minute entry on the judge's docket that the case was "tried October 28th and 29th and submitted to be briefed and argued November 9th." Insertion of the date, November 9th, is evidently an inadvertance for the record shows that such date fell on Sunday. The record further shows that defendants' brief and plaintiff's authorities were submitted before November 8th and nothing further was in fact contemplated by either side except the decision of the court when the request for leave to take a nonsuit was made. Plaintiff alludes to the record at the close of plaintiff's case and again at the close of the whole case indicating that plaintiff reserved the right to introduce certain documentary proof, and argues that the case was not under submission when leave for nonsuit was requested. As far as the right to introduce further evidence goes, the minute entries of both the clerk and the court indicate otherwise, and counsel for plaintiff made no effort to invoke it until they met with objection to their request to take a nonsuit. Upon this record we think the trial court correctly ruled. [Lawyers' Co-operative Pub. Co. v. Gordon, 173 Mo. 139.]

Notwithstanding the failure of appellant's brief to distinctly allege other errors, we have carefully examined the record before us and conclude that the case was properly tried, considered and adjudged.

The judgment is affirmed. All concur.